MARY C. DENNETTE *vs.* BOSTON SECURITIES COMPANY.

Suffolk.    June 24, 1910. — September 7, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction*, To rescind contract with unauthorized agent of defendant, To compel removal of plaintiff's name from list of stockholders of corporation.    *Contract*, Construction, Rescission.    *Equity Pleading and Practice*, Bill, Variance.

A woman was approached by one P., who sought to sell to her shares of the capital stock of a certain corporation.    Upon her objecting that she desired to make an investment in a security which could be readily sold on the market, P. promised that, if she would buy the shares, the corporation upon thirty days' notice would agree to resell the shares for her for the price that she paid for them.    At the woman's request that such agreement be put in writing, P. produced a letter containing such agreement, written on what purported to be paper bearing the letter head of the corporation with the names of the corporation's officers thereon, and of "R., Fiscal Agent."    The letter was signed simply, "R."    The woman thereupon purchased and paid for the shares.    Thereafter, desiring to take advantage of the agreement as to resale of the shares, she gave to the officers of the corporation the requisite notice.    The officers refused to recognize the agreement as valid because R. had no authority to make it.    The woman thereupon by a suit in equity against the corporation sought a rescission of the sale, a repayment of what she had paid for the shares, and that her name be stricken from the list of stockholders of the corporation, and in her bill of complaint averred, "The defendant company employed an agent to sell its treasury stock, and said agent in the course of said employment . . . in order to induce the plaintiff to buy some of said stock, promised, on behalf of" the corporation as above stated, and that the defendant "neglected and refused" to carry out the agreement as to resale of the shares, and "further denied that it had ever made any" such agreement as to resale "and has repudiated said agent's contract or promise that the company would so do."    The defendant demurred to the bill on the ground that the plaintiff, while alleging in the language above quoted that R. was the authorized agent of the corporation, contended that she

was entitled to maintain her suit because his acts were unauthorized by the corporation. The demurrer was overruled, and the defendant appealed. Upon the above facts being agreed to by the parties, the defendant further contended that there was a variance between the allegations of the bill and the proof, and the presiding judge reserved the case for determination by the full court. *Held*, that as matter of construction the letter signed by " R. Fiscal Agent," purported to be the undertaking of the defendant, that upon the allegations of the bill it was evident that the plaintiff meant to allege that, while R. was employed by the defendant to sell stock, in the course of his employment he undertook without authority to make the agreement as to resale, and therefore that the demurrer rightly was overruled; *also*, that there was no variance; *also*, that there was no adequate remedy at law, and *also*, that a decree should be entered for a rescission of the contract and ordering that the plaintiff's name be stricken from the list of stockholders of the defendant.

LORING, J. This case comes before us on a reservation* without a finding of facts. There was a demurrer which was overruled, and an appeal was taken from the order directing it to be overruled. We construe the reservation to include the correctness of this order. The case was submitted to the Superior Court on an agreement as to certain facts and as to the testimony which would be given by certain witnesses.

The facts of the case are these: In September, 1908, the plaintiff was approached by one Perine to buy stock in the defendant corporation. She thought well of the investment so far as its intrinsic merits were concerned. But she wanted an investment which could be readily sold on the market. To overcome this objection on the part of the plaintiff, Perine promised that if the plaintiff would buy the stock the defendant corporation would agree to resell the shares taken by her, at a price to " net " her $110 per share, within thirty days after receipt of her order to sell. To this the plaintiff assented but insisted that the agreement should be put in writing. In consequence of that agreement Perine produced a letter written on what purported to be the paper of the defendant corporation, headed with its name and the names of its president, secretary, treasurer, and " Fiscal Agent." This letter was signed by " C. M. Rogers." The name " C. M. Rogers " appeared on the letter head of the letter in question as " Fiscal Agent " of the defendant corporation. We are of opinion as matter of construction that this letter purported to be the un-

---

* By *Richardson, J.*

dertaking of the defendant corporation. On September 29, 1908, this letter was delivered to the plaintiff and a sale to her was carried through (on the terms mentioned above) of ten shares at $110. In June, 1909, the plaintiff received information which led her to become alarmed about this investment of hers in the stock of the defendant corporation. In consequence her husband called upon the defendant's president, called his attention to the letter of September 29, and notified him that his wife probably would give the defendant an order to sell the stock held by her. The president denied Rogers's authority to "issue the writing of said September 29, 1908," and said that an order if presented "would probably be refused." On July 8, 1909, a formal order for resale under the letter of September 29, 1908, was made on the defendant. On the next day the plaintiff, by her agent, with the plaintiff's certificate ready for delivery, called upon the defendant's president. He stated that the defendant company would do nothing about the matter. The plaintiff then put the matter in the hands of her counsel and negotiations were had until August 31, when a formal demand was made in behalf of the plaintiff which was refused. This bill was filed on September 1, 1909.

It was agreed " that the said Perine and the said Rogers were both acting in good faith in connection with the sale of the stock to the plaintiff, Mrs. Mary C. Dennette, as hereinabove set forth, and that the writing, except for the signature, was the same as, or similar to, others which had been previously issued by the defendant company and signed by its officers on other and prior sales of the stock of the defendant company."

It was also agreed that the president and secretary and treasurer of the defendant company would " testify that they had no knowledge of the transactions hereinbefore referred to until June 24, 1909, and that they know of no authority ever having been given to the said Rogers to execute on behalf of the company any agreement for the re-sale of the stock."

The bill is a bill for a rescission of the contract made on September 29, 1908, on the ground that it now appears that it was made on terms on which the defendant's agent had no authority to contract. The facts of the case bring it within

the doctrine laid down in *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1.    See in this connection *Keene* v. *Demelman*, 172 Mass. 17; *Attorney General* v. *American Legion of Honor* (*Hall's claim*), ante, 158.

The defendant has urged in support of its demurrer that the allegation of the bill is that the promise contained in the letter of September 29, 1908, was made by an agent of the defendant corporation in the course of his employment, and if that be so this case is not within *Rackemann* v. *Riverbank Improvement Co.*    This is also relied on by the defendant in support of its contention that there was a variance between the allegation and the proof.    The allegation relied on by the defendant in this connection is found in the first paragraph of the bill of complaint and is in these words : " The defendant company employed an agent to sell its treasury stock, and said agent in the course of said employment on or about September 29, 1908, in order to induce the plaintiff to buy some of said stock, promised, on behalf of the said defendant company," * etc.    But taking the amended bill of complaint as a whole it is evident that what the plaintiff meant to allege was that the agent employed by the defendant in selling to the plaintiff the ten shares of stock in the course of his employment, in order to induce the plaintiff to buy some of said stock, without authority promised.    It would have been better if this allegation had been made more accurate, but it will do.

The defendant has also argued that the plaintiff has an adequate remedy at law.    But that is not so.    A court of law cannot compel the defendant to strike out the plaintiff's name from its list of stockholders.

The plaintiff is entitled to a decree directing the defendant to pay to the plaintiff, upon her surrendering her certificate of

---

. * The above quotation appeared in the first paragraph of the bill.    In the third paragraph was the following: " That the said defendant company has neglected and refused during the thirty days immediately following said July 8, 1909, to sell said stock for the said plaintiff, and still refuses and neglects so to do, and has further denied that it had ever made any agreement to re-sell said stock to net the plaintiff $110 per share within thirty days after receipt of her order so to sell, and has repudiated said agent's contract or promise that the company would so do."

stock for ten shares, $1,100 with interest from September 29, 1908, less such sums with interest as the plaintiff has received as dividends thereon, and directing the defendant also to strike out the plaintiff's name from the list of its stockholders.

*So ordered.*

The case was submitted on briefs.

*H. Parker & H. H. Fuller,* for the defendant.

*W. N. Swain, E. N. Carpenter & G. M. Nay,* for the plaintiff.