OSCAR F. GRANLUND & another *vs.* MICHAEL A. SARAF & others.

Suffolk. December 5, 1927. — March 5, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Contract*, Validity, Rescission. *Fraud. Sale*, Rescission. *Bills and Notes*, Holder in due course. *Evidence*, Presumptions and burden of proof.

Attempts under the form of contract to secure total or partial immunity from liability for fraud are all under the ban of the law; such a contract is voidable at the election of the party injured by the fraud.

The owner of a retail business, by means of false and fraudulent representations to the effect that the gross receipts of the business were greatly in excess of what they were in fact, procured a sale of the busi-

ness to one to whom he delivered as a part of the transaction a bill of sale, which contained nothing as to any representations or misrepresentations, and a document wherein he guaranteed that all statements made by him as to the sale were true and agreed that if, after a period of six months from the date of sale, the plaintiff should find that any misrepresentation had been made by him, he would take the store back and refund the money paid, provided that the store then contained as much merchandise as was in it at the time of sale. This document further provided that it would "not be binding unless the fixtures and equipment are kept in the same good condition that they are on this date. It is further agreed that . . . [the seller] will have the right to a trial of at least two weeks to prove that the business good will has not been affected and that there is the same amount of business being done weekly as there has been up to this date." The buyer accepted the document, discovered the fraud, and, within six months of the sale and when the goods sold were of as great value as at the time of the purchase, brought a suit in equity to rescind the transaction, offering back what he had received. *Held*, that

(1) The attempted limitations in the contract, to the effect that the plaintiff should not seek relief for the fraud practised upon him until after six months from the date of the contract, and even then should be restricted as to the form of relief, were voidable at the election of the plaintiff;

(2) The suit was not brought prematurely.

(3) The plaintiff was entitled to rescission.

It appeared at the hearing of the suit above described that the fraudulent seller had negotiated a note of the buyer, which formed part of the purchase price, to a third person, who was made a defendant. *Held*, that, under G. L. c. 107, § 82, the burden of proving himself an innocent purchaser of the note for value was on the third person.

BILL IN EQUITY for rescission of a sale of a retail business, filed with a writ of summons and attachment dated May 2, 1927, and afterwards amended, described in the opinion.

In the Superior Court, the suit was heard by *Lummus*, J. Material facts found by the judge, without a report of the evidence, are stated in the opinion. By order of the judge, a final decree was entered dismissing the bill. The plaintiffs appealed.

*J. J. Leonard*, for the plaintiffs.

*G. A. McLaughlin*, for the defendant.

RUGG, C.J. This is a suit in equity to rescind a contract whereby the defendant Michael A. Saraf sold and the plaintiffs bought a retail business known as "Brighton Paradise," including goods, chattels and fixtures. The plaintiffs paid $2,300 in cash and gave a note and mortgage securing the

same to said Saraf, covering the property bought, for $2,000, which was later assigned to the defendant Demarjian. Both the defendants Saraf made false and fraudulent representations to the plaintiffs which induced them to make the purchase. These false and fraudulent representations were to the effect that the gross receipts of the business were greatly in excess of what they were in fact. The plaintiffs offer to return the property purchased and to deliver back the store in substantially the same condition as when bought. The business, stock and fixtures at the time of the trial were of as great value as at the time of the purchase. Demarjian was not an innocent purchaser for value of the note and mortgage but held them subject to any right of rescission that the plaintiffs might have. A bill of sale was given by Michael A. Saraf to the plaintiffs, and on the same date and forming a part of the same transaction as the bill of sale was a document executed by Michael A. Saraf wherein he guaranteed and warranted that all statements made by him in selling the "Brighton Paradise" were true, and he further agreed that if, after a period of six months from the date of sale, the plaintiffs should find that any misrepresentation had been made by said Saraf, he would take the store back and refund the money paid, provided that the store then contained as much merchandise as was in it at the time of sale. The agreement provided also: "Furthermore this agreement will not be binding unless the fixtures and equipment are kept in the same good condition that they are on this date. It is further agreed that I Michael A. Saraf will have the right to a trial of at least two weeks to prove that the business good will has not been affected and that there is the same amount of business being done weekly as there has been up to this date." No "trial" as required by that agreement was offered to Michael A. Saraf by the plaintiffs before instituting this suit, which was begun within six months after the date of sale. The plaintiffs accepted this document and treated it in combination with the bill of sale as comprising their contract with said Saraf. The bill of sale contained nothing as to any representations or misrepresentations.

The foregoing were found to be the facts by the trial judge. No evidence is reported.   Hence, all these findings must be accepted as true.   *First Baptist Society in Brookfield* v. *Dexter*, 193 Mass. 187, 189.   *Reno* v. *Cotter*, 236 Mass. 556, 561.   *Commissioner of Banks in re Cosmopolitan Trust Co.* 249 Mass. 144, 147.

It is a fundamental principle of law, as it is of morals, public policy and fair dealing, that a party cannot contract against liability for his own fraud.   Fraud which enters into the making of the contract cannot be excluded from the reach of the law by any form of phrase inserted in the contract itself.   Parties cannot by written words prevent the law from inquiring into and granting relief for fraud in the substance of the contract.   *Butler* v. *Prussian*, 252 Mass. 265, 268.   Many contracts have been refused enforcement whereby a party has striven to shield himself from the results of his fraudulent practices upon the other party.   Such contracts, if given validity, would overcome the salutary maxim which pervades the common law, that fraud vitiates every transaction at the election of the injured party.   *Hashem* v. *Massachusetts Security Corp.* 255 Mass. 29, 31.   *Bridger* v. *Goldsmith*, 143 N. Y. 424, 428, 429.   *S. Pearson & Son, Ltd.* v. *Dublin Corp.* [1907] A. C. 351, 354, 360.   *United States* v. *Atlantic Dredging Co.* 253 U. S. 1, 11.   *J. A. Fay & Egan Co.* v. *Independent Lumber Co.* 178 Ala. 166, 168. *Hofflin* v. *Moss*, 14 C. C. A. 459, 463, 464.   *Strand* v. *Griffith*, 38 C. C. A. 444, 448.   *Passaic Valley Sewerage Commissioners* v. *Holbrook, Cabot & Rollins Corp.* 6 Fed. Rep. (2d), 721, 724.   See 10 Am. L. R. 1472, *et seq.* for collection of cases.

The agreement in the case at bar does not go so far as to stipulate that the plaintiffs shall have no remedy against Michael A. Saraf for any fraud committed by him in procuring the sale.   But it is an obvious effort to limit and to restrict the plaintiffs in pursuing such remedy both as to time and as to conditions precedent.   Its purpose is to exonerate said Saraf from liability for such fraud during a definite period of time, and after the expiration of that period to confine such liability within narrow bounds and to make it conditional upon the preliminary performance of unusual

and onerous conditions by the plaintiffs. These terms, while not so comprehensive as those revealed in many of the decisions already cited, fall within the sweep of the general principle heretofore stated. This agreement is subject to the same vice and the same condemnation by the law as an attempt at more complete protection against fraud. Relief against fraud is a remedy afforded by the law. It does not depend upon agreement of parties. It is independent of stipulation. Attempts under the form of contract to secure total or partial immunity from liability for fraud are all under the ban of the law. The extent of the relief granted to the injured party, in order to be adequate and complete, cannot be constricted by act of the parties. The nature of fraud and the grounds upon which the law denounces it are such that it cannot be made the subject of preliminary or contemporaneous alleviating contract. To regard the terms of this agreement as binding would greatly hamper the relief to which the plaintiffs are entitled under the law upon the facts as found. It is of no consequence in this connection that the document containing the agreement as to partial immunity of the defendant Michael A. Saraf was the result of fear on the part of the plaintiffs, although believing and acting upon the representations of the Sarafs, that those representations might turn out to be false.

The findings of the judge are ample to support the allegations of fraud set forth in the bill. The remedy sought by the plaintiffs was open, namely, to rescind the contract, to return the property received, and to recover the price paid including cancellation of the note and mortgage. They are entitled to full relief. *Smith* v. *Everett*, 126 Mass. 304. *Lefevre* v. *Chamberlain*, 228 Mass. 294, 297. *Ginn* v. *Almy*, 212 Mass. 486, 493.

The case at bar is distinguishable from *Colonial Development Corp.* v. *Bragdon*, 219 Mass. 170, *Sullivan* v. *Roche*, 257 Mass. 166, 171, and similar decisions where parties, freely and without fraud or imposition, have made a written contract to the effect that all representations touching the subject matter of the contract are therein set forth; in such cases it has been held that the terms of the formal contract

cannot be varied or contradicted by proof that there were other antecedent representations fraudulent in nature.

It follows that the attempted limitations in the contract, to the effect that the plaintiffs should not seek relief for the fraud practised upon them until after six months from the date of the contract, and even then should be restricted as to the form of relief, were voidable at the election of the plaintiffs, and that this suit was not prematurely brought. Cases like *Bartlett* v. *New York, New Haven & Hartford Railroad*, 226 Mass. 467, and *Isam Mitchell & Co. Inc.* v. *Rastok*, 241 Mass. 505, where suits were found to have been brought prematurely, have no relevancy to the facts here disclosed.

The ruling was right that, in the circumstances disclosed as to the fraud in getting the note from the plaintiffs by the payee, the burden of showing that Demarjian was an innocent purchaser of the note for value was upon him. G. L. c. 107, § 82. *Bill* v. *Stewart*, 156 Mass. 508. *Lewiston Trust & Safe Deposit Co.* v. *Shackford*, 213 Mass. 432. The finding that he was not such a purchaser must be accepted as true.

The result is that the final decree dismissing the bill must be reversed. A new decree is to be entered granting complete relief to the plaintiffs, with costs. The details are to be fixed in the Superior Court.

*So ordered.*